UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LE BLEU CORPORATION,

    Plaintiff,

  v.             Case No. 17-CV-0549

FEDERAL MFG. LLC and
PRO MACH, INC.,

    Defendants.

---

## DECISION AND ORDER

  Plaintiff Le Bleu Corporation produces bottled beverages, such as bottled water and juice. Defendant Federal Mfg., LLC, a Wisconsin limited liability company, manufactures bottle-filling machines. In December 2014, Le Bleu entered into a contract to purchase a filling machine, known as a "filler," from Federal. In this action for breach of contract, Le Bleu alleges that the filler did not perform as promised. Le Bleu also alleges that Federal's parent company, Pro Mach, Inc., is liable for Federal's breach under a veil-piercing theory. Before me now are two motions to compel discovery filed by Le Bleu. The first motion seeks production of seven email messages that the defendants claim are protected by the attorney-client and work-product privileges. The second motion seeks production of certain documents relating to Le Bleu's veil-piercing theory.

  A.  **Email Messages**

  In response to Le Bleu's requests for the production of documents, the

defendants objected to producing seven responsive emails on the ground that they are protected by the attorney-client privilege and the work-product doctrine. The emails in question were either authored by or sent to Patrick Mohan, who is employed by defendant Pro Mach and holds the title "Chief Administrative Officer." Mohan has a law degree and is a member in good standing of the Ohio bar. The defendants state that one of Mohan's job duties is to oversee the legal needs of Pro Mach and its subsidiaries. (Mohan Decl. ¶ 2.) The defendants further state that the emails to and from Mohan were communications about Le Bleu's legal claims and were made for the purpose of obtaining legal advice from Mohan about those claims. (*Id.* ¶ 6.) Thus, argue the defendants, the communications are protected by both the attorney-client privilege and the work-product doctrine.

Le Bleu contends that, although Mohan is an attorney, he was not rendering legal advice to the defendants when he sent and received the disputed emails. However, Mohan has submitted a declaration in which he states that one of his duties at Pro Mach is to oversee the legal needs of Pro Mach and its subsidiaries (which includes Federal). He further states that the disputed emails "all relate to [Le Bleu's] second demand letter," and that "the purpose of those communications was for relevant employees to provide information requested as necessary to evaluate [Le Bleu's] demand letter and to engage outside counsel." (*Id.*) Mohan's declaration establishes that the communications were made to him in his capacity as Pro Mach's and Federal's in-house counsel for the purpose of obtaining legal advice—namely, so Mohan could advise the defendants about Le Bleu's claim and to assist them in retaining outside counsel. Le Bleu has submitted no evidence that contradicts Mohan's declaration.

2

Therefore, I find that the emails are protected by the attorney-client privilege and that the defendants are not required to produce them. (Because the emails are protected by the attorney-client privilege, I will not separately consider whether they are also protected as work product.)

Le Bleu also contends that if Mohan was providing advice to the defendants, then he was engaged in the unauthorized practice of law. Le Bleu points out that Mohan, who is licensed to practice law in Ohio, is not also licensed in Kentucky, which is where Pro Mach was located at the time of Mohan's advice. Le Bleu contends that Mohan's providing legal advice to a corporation located in Kentucky without being admitted to practice in Kentucky would violate the state's rules of professional responsibility. Le Bleu then argues that, because Mohan rendered advice in violation of Kentucky's rules of professional responsibility, the defendants' communications to him, as well as his advice to them, could not have been privileged.

In support of this argument, Le Bleu cites a case decided in 1954 by the District of Delaware. *See Zenith Radio Corp. v. Radio Corp. of Am.*, 121 F. Supp. 792 (D. Del. 1954). But this case does not hold that the attorney-client privilege does not attach when a licensed attorney renders advice to a client in a manner that could be construed as the unauthorized practice of law. Instead, the case states that the privilege applies only if the person "is a member of the bar of *a* court." *Id.* at 794 (emphasis added). The case does note that "[b]ar membership should properly be of the court for the area wherein the services are rendered," but then it immediately adds that "this is not a sine qua non." *Id.* In any event, I am not bound by this district-court case, and I note that other courts have recognized that so long an attorney is licensed to practice law in

3

some jurisdiction, then the client's communications to him will be privileged even if the attorney's advice might technically constitute the unauthorized practice of law in another jurisdiction. *See Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F.Supp.3d 419, 428–29 (M.D. Pa. 2016); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 1:11–cv–1108–SEB–TAB, 2013 WL 2406262, at *9 (S.D. Ind. 2013). I find these cases persuasive. I also note that the attorney-client privilege belongs to the client rather than the lawyer, *see, e.g., Lane v. Sharp Packaging Sys., Inc.*, 251 Wis. 2d 68, 99 (2002), and that it would unfairly punish the client to find that a communication is not privileged simply because the attorney was not in technical compliance with the rules of professional responsibility. Thus, even if Mohan may have violated the Kentucky rules of professional responsibility (a subject on which I express no view), the defendants' communications to him for the purpose of obtaining legal advice would still be privileged.

For these reasons, Le Bleu's motion to compel the production of the seven emails will be denied.

**B.      Documents Regarding Veil Piercing**

Le Bleu next seeks to compel production of certain information that it contends is relevant to its claim that Federal's "corporate" veil should be pierced so that Le Bleu can hold Pro Mach liable for Federal's breach of contract.[1] Specifically, Le Bleu seeks the production of certain tax returns, profit-and-loss statements, and information concerning the net worth of Federal and Pro Mach. The defendants object to producing this information because, among other reasons, they contend it is not relevant to Le Bleu's

---

[1] I put "corporate" in scare quotes because Federal is a limited liability company, not a corporation.

4

claim that Federal's corporate veil should be pierced. *See* Fed. R. Ci v. P. 26(b)(1). Le Bleu contends that the requested information is relevant to two factors that some courts consider when deciding whether to pierce the corporate veil: undercapitalization and failure to observe corporate formalities.

It is true that undercapitalization is a factor that courts sometimes consider in the veil-piercing context. But this factor usually matters only in tort cases involving an involuntary creditor, rather than a contract case involving a voluntary creditor, such as the present case. *See Secon Serv. Sys., Inc. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 412–6 (7th Cir. 1988); 1 James D. Cox & Thomas L. Hazen, *Treatise on the Law of Corporations*, § 7:11 (3d ed. Westlaw 2017).[2] Thus, the entire question of undercapitalization is likely not relevant. But even if it were, what would matter is whether Federal was undercapitalized at the time it was incorporated. *See, e.g., Secon Serv. Sys.*, 855 F.2d at 416 ("undercapitalization, when considered at all, is evaluated with emphasis on the time of incorporation rather than thereafter"); *Consumer's Co-op of Walworth County*, 142 Wis. 2d at 486 (agreeing that the adequacy of capital is to be measured as of the time of formation of the corporation). Le Bleu's discovery requests,

---

[2] Some states, including Wisconsin, consider undercapitalization relevant to a voluntary creditor's veil-piercing claim, but treat the creditor's having had an opportunity to assess the corporation's solvency to be a factor that justifies a finding of waiver of the undercapitalization objection, or that supports a claim for equitable estoppel. *See Consumer's Co-op of Walworth County v. Olsen,* 142 Wis. 2d 465, 481–82 (Ct. App. 1988); 1 Fletcher Cyclopedia of the Law of Corporations § 41.33 (Westlaw 2017) ("Under the doctrines of waiver and equitable estoppel, a corporate creditor may be precluded, by continuing to extend credit and by failing to take advantage of the opportunity to investigate the corporation's capital foundation, from claiming the inadequacy of the corporation's capitalization as the basis to pierce its veil."). The end result is generally the same as in the other states: a voluntary creditor who had an opportunity to investigate the corporation's capitalization cannot complain if it later turns out that the corporation was undercapitalized.

5

however, ask for information about Federal's capitalization between 2014 and the present, rather than at the time it was incorporated.

Another problem with Le Bleu's discovery requests is that they seek information about Pro Mach's capitalization, as well as the capitalization of Pro Mach's parent company, Pro Mach Holdings. But Le Bleu only seeks to pierce Federal's corporate veil. (Am. Compl. ¶¶ 7–20.) Thus, information about whether Pro Mach and Pro Mach Holdings were undercapitalized, such that their corporate veils could be pierced, is not relevant to this case.

Le Bleu argues that its requests for the defendants' tax returns are relevant to the question of whether Federal failed to observe corporate formalities. It is true that a corporation's failing to file a tax return can be a failure to observe a corporate formality. *See* 1 Cox & Hazen, § 7:9 (noting that "failure to file an annual report or tax return" can be a failure to observe a corporate formality). But Federal is a limited liability company, one of the hallmarks of which is pass-through taxation. *See Mulcahy, Pauritsch, Salvador & Co., Ltd. v. Comm'r*, 680 F.3d 867 (7th Cir. 2012). Thus, it may be that Federal is not required to file separate tax returns, and that therefore its failure to do so would not amount to a failure to observe a corporate formality. However, at this point, I cannot say that Federal was not required to file tax returns for the years 2014 to 2016, which are the years relevant to Le Bleu's discovery requests. For this reason, I will require Federal to produce documents showing whether or not it filed state and federal tax returns for those years. However, because the actual contents of the tax returns are not relevant to the question of whether Federal observed corporate formalities, Federal does not have to produce the tax returns themselves. Moreover, because, as

discussed above, Le Bleu does not assert veil-piercing claims against Pro Mach or Pro Mach Holdings, the defendants do not have to produce tax information for these entities.

**CONCLUSION**

For the reasons stated, **IT IS ORDERED** that Le Bleu's motion to compel production of certain emails (ECF No. 50) is **DENIED**.

**IT IS FURTHER ORDERED** that Le Bleu's motion to compel production of certain information relating to piercing Federal's corporate veil (ECF No. 52) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that Federal must produce documents sufficient to show whether Federal filed state and federal tax returns for the years 2014 to 2016. In all other respects, the motion is denied.

Dated at Milwaukee, Wisconsin, this 2nd day of April, 2018.

                                              s/ Lynn Adelman_____
                                              LYNN ADELMAN
                                              District Judge